UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                   :

PAUL CONNORS,                       :

                                 :      21 Civ. 4953

             Plaintiff,         :      ECF Case

                                 :

           - against -        :

                                 :

AMOREPACIFIC US, INC., INSPERITY PEO   :      **COMPLAINT**
SERVICES, L.P., RAYMOND KYUNGKOOK   :      **AND JURY DEMAND**
KIM, and JAE KYUNG SHIM,          :

                                 :

           Defendants.     :

                                 :
-----------------------------------------------------------------x

       Plaintiff Paul Connors, by his attorneys, Bantle & Levy LLP, as and for his Complaint

against Defendants Amorepacific US, Inc. ("Amorepacific" or the "Company"), Insperity PEO

Services, L.P. ("Insperity"), Raymond KyungKook Kim, and Jae Kyung Shim alleges as follows:

## NATURE OF THE ACTION

       1.     This is an action for employment discrimination based on national origin in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* (the

"NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*

(the "NYCHRL"), employment discrimination based on race in violation of Title VII, the

NYSHRL, and the NYCHRL, employment discrimination based on sexual orientation in

violation of Title VII, the NYSHRL, and the NYCHRL, and unlawful retaliation in violation of

Title VII, the NYSHRL, and the NYCHRL.  Plaintiff seeks declaratory relief and damages.

## JURISDICTION AND VENUE

       2.     This Court has jurisdiction over this action under 28 U.S.C. § 1331.

3.     This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as his Title VII claims.

4.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the asserted claims occurred herein.

5.     All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. § 2000e-5(f)(3), have occurred or been complied with:

    a.     On or about November 12, 2020, Connors filed written Charges of Discrimination against Amorepacific and Insperity with the Equal Employment Opportunity Commission ("EEOC").

    b.     In his Charges of Discrimination, which were filed within 300 days of the adverse actions at issue in this action, Connors alleged that Amorepacific and Insperity discriminated against him on the basis of his national origin, race, and sexual orientation and retaliated against him for opposing their unlawful conduct.

    c.     On or about March 9, 2021, Right to Sue notifications were issued by the EEOC to Connors regarding his Charges against Amorepacific and Insperity.

    d.     This Complaint has been filed within 90 days of Connors' receipt of the EEOC's Right to Sue Notifications.

## PARTIES

6.     Connors is a citizen of the State of New York and currently resides in Brooklyn, New York.

7.      Upon information and belief, Amorepacific is a domestic corporation organized under the laws of the State of New York and maintains offices at 1407 Broadway, Suite 210, New York, New York 10018.

8.      Upon information and belief, Amorepacific is a beauty and cosmetics company and is a wholly-owned subsidiary of Amorepacific Group, a South Korean organization that manages and operates beauty and cosmetics brands worldwide.

9.      At all times relevant herein, Amorepacific was solely responsible for assigning work to Connors, supervising him in the performance of that work, and controlling his work schedule.

10.     At all times relevant herein, Amorepacific is and was an employer engaged in industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b), and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

11.     Upon information and belief, Insperity is a foreign limited partnership licensed to do business in the State of New York.

12.     Upon information, Insperity is a professional employer organization.

13.     Upon information and belief, on or about September 7, 2018, Amorepacific entered into a contract with Insperity pursuant to which Insperity performed human resources functions – including payroll administration, benefits administration, workers' compensation claims administration, and retirement services administration – for Amorepacific.

14.     Consistent with that agreement, beginning on or about September 7, 2018, Insperity paid Connors' salary during remainder of his employment with Amorepacific.

15.     Amorepacific and Insperity were joint employers of Connors.

16.     At all times relevant herein, Insperity is and was an employer engaged in industry affecting commerce within the meaning of Title VII, 42 U.S.C. § 2000e(b), and an employer within the meaning of the NYSHRL, N.Y. Exec. L. § 296(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

17.     Upon information and belief, Kim is a citizen of South Korea who currently resides in South Korea.

18.     At all times relevant herein, Kim is and was a person within the meaning of the NYSHRL, N.Y. Exec. L. § 292(1), and the NYCHRL, N.Y.C. Admin. Code §§ 8-102.

19.     Upon information and belief, Shim is a citizen of South Korea who currently resides in South Korea.

20.     At all times relevant herein, Shim is and was a person within the meaning of the NYSHRL, N.Y. Exec. L. § 292(1), and the NYCHRL, N.Y.C. Admin. Code §§ 8-102.

## STATEMENT OF FACTS

**Connors Joins Amorepacific**

21.     Connors is a highly accomplished business executive with nearly twenty years of experience selling, marketing, and managing beauty and cosmetics lines and products.

22.     On or about August 1, 2018, Connors commenced employment with Amorepacific as Vice President of its Premium Division.

23.     As Vice President of Amorepacific's Premium Division, Connors was responsible for managing four of the Company's brands, including its largest and most successful brand in the United States.

24.     Connors performed successfully in his role as Vice President.

25.     Throughout the duration of his employment with Amorepacific, Connors consistently received excellent performance reviews and met and/or exceeded his key performance indicators.

26.     In recognition for his successful performance, Connors received merit-based bonuses and raises during each year of his employment with Amorepacific.

**Connors is Subjected to a Hostile Work Environment at Amorepacific**

27.     Connors, who is a white American man not of Korean descent or heritage, was one of few openly gay men employed by Amorepacific.

28.     Notwithstanding his strong performance with Amorepacific, Connors was ostracized and undermined by certain of his colleagues, heterosexual men from South Korea (where Amorepacific's parent company is headquartered).

29.     These attacks were led by Raymond KyungKook Kim, Vice President of Luxury Marketing, and Jay Kyung Shim, Vice President of Strategy, heterosexual South Korean nationals who worked for the Company out of its New York office.

30.     Among other things, Kim and Shim excluded Connors from important work-related communications that he should have been included on, regularly disrespected him in the presence of his direct reports, and made false statements about him to his direct reports and members of the Company's senior leadership.

31.     Kim and Shim endeavored to cause Connors to lose the respect of his colleagues by disrespecting him in their presence and making false statements about him to them (including, upon information and belief, manufacturing and spreading a false rumor about Connors within Amorepacific's senior leadership designed to engineer his ouster, as discussed below).

32.     By their actions, Kim and Shim sought to and did in fact cause Connors to feel publicly shamed and humiliated in front of his peers.

33.     Kim and Shim's conduct towards Connors was hostile, unprofessional, and demeaning.

34.     By contrast, Kim and Shim treated their heterosexual, South Korean colleagues with respect.

35.     The Company's South Korean employees, who comprised a substantial portion of its workforce and a majority of its senior leadership team, treated each other with more respect and were more comfortable working with one another than their colleagues who were not of South Korean descent or heritage.

36.     Although they are fluent in English, Kim and Shim – over his objections – regularly communicated with Connors' direct reports regarding significant work-related topics in Korean (which Connors does not speak or understand) so as to marginalize him at the Company.

37.     Upon information and belief, Kim's predecessor as Vice President of Luxury Marketing – an American woman not of Korean descent or heritage with whom Connors had discussions regarding the discriminatory treatment that they both had been subjected to – repeatedly complained to Company personnel that she was being discriminated against by her South Korean colleagues on account of her race and national origin.

38.     Kim and Shim were uncomfortable working with members of the LGBTQ community.

39.     Upon information and belief, shortly after Connors' hiring, Shim inquired into his sexual orientation, asking a colleague, "Well, is Paul straight?"

40.     Further evidencing his discomfort with LGBTQ people, upon information and belief, Shim remarked about a lesbian woman formerly employed by the Company (the "Former Employee"), "I don't understand, is it a boy or is it a girl?  Because, if she's a girl, she dresses like a boy."

41.     Likewise, upon information and belief, Kim was the subject of an internal complaint brought by the Former Employee who alleged that he discriminated against her on the basis of her sexual orientation and was biased against the LGBTQ community.

42.     Kim and Shim's hostile and unprofessional conduct towards Connors was motivated by discriminatory bias on the basis of Connors' national origin, race, and sexual orientation.

43.     By their conduct, Kim and Shim subjected Connors to a hostile work environment based on his national origin, race, and sexual orientation.

**Amorepacific Fails to Act on Connors' Complaints of Discrimination**

44.     Due to the adverse and differential treatment that he was being subjected to by Kim and Shim, Connors believed that he was being discriminated against on account of his national origin, race, and sexual orientation.

45.     Consequently, beginning in October 2019, Connors had a series of in-person meetings with Jina Hong, Human Resources Director, during which he repeatedly raised concerns about workplace discrimination at Amorepacific.

46.     Specifically, during meetings on October 9, 2019, December 5, 2019, and January 14, 2020, Connors complained to Hong that he was being discriminated against by Kim and Shim.

7

47.      Following their January 14, 2020 meeting, Connors sent an email to Hong in which he summarized his complaints that he was being "discriminated against by some members of the [South Korean] expat community" and that Kim and Shim had "publicly shamed and humiliated" him in an effort to "sabotage … and have [him] lose the respect of … colleagues and team members through … discrimination and defamation."  In that email, Connors further noted that Kim and Shim "continually" sidestepped him by speaking only with his direct reports regarding significant topics that he was directly handling, repeatedly sought to "set [him] up to fail," excluded him from "important" work-related communications on which he should have been included, and made false statements about him to his direct reports and senior leadership alike.

48.      Amorepacific took no action to address any of Connors' complaints of discrimination.

49.      Neither Kim nor Shim was reprimanded for their discriminatory behavior towards Connors.

50.      Because of Amorepacific's inadequate response to Connors' complaints of discrimination, Kim and Shim's discriminatory conduct continued unabated.

51.      As a result, Connors was forced to endure ongoing mistreatment designed to push him out of the Company.

**Connors is Subjected to Continued Mistreatment Designed to Engineer His Termination**

52.       As part of their continued effort to undermine his standing at Amorepacific, Connors' colleagues falsely reported to Robin Jung-Kyun Na – a South Korean national who, in June 2020, was appointed President of Amorepacific – that Connors was unhappy with his salary and planning to leave the Company.

53.     Upon information and belief, Kim and Shim were responsible for manufacturing and spreading those false rumors.

54.     Consequently, during what was supposed to be a "meet and greet" with Na that took place on or about July 2, 2020, Connors was interrogated by Na about his alleged unhappiness at Amorepacific.

55.     Connors' efforts to refute those lies were unsuccessful.

56.     Although Connors repeatedly denied the false rumors during that conversation, Na refused to accept that they were untrue.

57.     Na's refusal to accept Connors' truthful answers to his questions caused Connors to conclude that Na was seeking to bully him into admitting to those falsehoods so as to justify terminating his employment.

58.     Accordingly, days later, on or about July 5, 2020, Connors complained to Hong about Na's interrogation and the false rumors that had been reported to him.

59.     Unaccountably, Hong did not respond to that complaint.

60.     Shortly thereafter, Connors was excluded from communications between Amorepacific and Ulta Beauty, Inc. ("Ulta"), one of his most significant retailer relationships that he managed directly.

61.     Connors' relationship with Ulta was essential to his success at Amorepacific and his reputation in the industry, and his exclusion from those communications marginalized his role with the Company and threatened to harm his relationship with Ulta.

62.     Upon information and belief, Na caused Connors to be excluded from those communications with Ulta.

**Amorepacific Retaliates Against Connors for Escalating His Complaints of Discrimination**

63.    On July 28, 2020, Connors met with Hong to discuss the ongoing discriminatory treatment that he was being subjected to.

64.    During that meeting, Connors complained to Hong that he was being treated differently than his heterosexual South Korean colleagues "because I am different, because I am not a Korean male, because I am not straight like them."

65.    Immediately following that meeting, Connors sent an email to Hong which memorialized their conversation and reiterated his complaints that he was being subjected to discriminatory treatment "due to the fact that I am a gay white male" and "am seen differently by the [South Korean] expats because I am not a heterosexual Korean male."

66.    Rather than express sympathy for Connors' concerns, Hong defended the Company.

67.    In response, Connors requested that Amorepacific investigate his complaints of discrimination.

68.    Upon information and belief, at Connors' request, Amorepacific subsequently asked Insperity to investigate his allegations.

69.    In connection with its investigation, Connors advised Insperity that he had been treated differently than his straight, South Korean colleagues and that Amorepacific lacked diversity and did not embrace the LGBTQ community.

70.    Connors was not kept appraised of the status of the investigation, and he was first advised of its findings weeks after the termination of his employment with Amorepacific.

71.    Upon information and belief, Insperity – which allegedly cleared Amorepacific of any wrongdoing – did not meaningfully investigate Connors' complaint of discrimination.

72.     Because of the Company's failure to meaningfully address his repeated complaints of discrimination, Connors retained a lawyer who, on August 11, 2020, sent a letter to Amorepacific on his behalf in an effort to improve Connors' working conditions and end the workplace discrimination that he was being subjected to.

73.     The following day, August 12, 2020, Amorepacific terminated Connors' employment, claiming that his position was being eliminated as part of an alleged reduction in force ("RIF").

74.     However, upon information and belief, the RIF was small in scope and did not affect any of the Company's South Korean employees.  Rather, the South Korean employees (including Kim) who were allegedly selected for termination were, in reality, transferred back to South Korea due to concerns about their visa status and continue to be employed by Amorepacific through its parent company.

75.     Amorepacific chose to retain one executive at Connors' level whose performance was inferior to Connors by objective measures, whose revenue generation for the Company was substantially less than Connors, and who had not met his key performance indicators as Connors had.

76.     Upon information and belief, this retained executive had not complained of discrimination as Connors had and had not earned the enmity of Kim and Shim due to being openly gay at the Company.

77.     At the time of the termination of his employment, Connors had received only praise for his work and had received no performance warnings or negative appraisals of any kind.

78.     Connors was subjected to differential and adverse treatment by Defendants on the basis of his national origin.

79.     Connors was subjected to differential and adverse treatment by Defendants on the basis of his race.

80.     Connors was subjected to differential and adverse treatment by Defendants on the basis of his sexual orientation.

81.     Connors' national origin was a motivating factor in Defendants' decision to terminate his employment.

82.     Connors' race was a motivating factor in Defendants' decision to terminate his employment.

83.     Connors' sexual orientation was a motivating factor in Defendants' decision to terminate his employment.

84.     Connors' opposition to workplace discrimination was a motivating factor in Defendants' decision to terminate his employment.

85.     The actions of Defendants described above were undertaken willfully, intentionally, maliciously and with reckless indifference to Connors' protected rights.

86.     As a result of Defendants' discriminatory and retaliatory termination of Connors, Connors was denied income, benefits, and other perquisites of employment, including continuing opportunities for promotion, advancement, recognition, and increased compensation that he otherwise would have received had he not been terminated.

87.     In addition, as a result of Defendants' discriminatory and retaliatory termination of Connors, Connors has sustained severe mental and emotional harm and distress.

## FIRST CAUSE OF ACTION
### *Discrimination on the Basis of National Origin in Violation of Title VII*
### *Against Defendants Amorepacific and Insperity*

88.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 87 inclusive as if fully set forth herein.

89.     As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by terminating Plaintiff's employment because of his national origin.

90.     As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## SECOND CAUSE OF ACTION
### *Discrimination on the Basis of Race in Violation of Title VII*
### *Against Defendants Amorepacific and Insperity*

91.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 90 inclusive as if fully set forth herein.

92.     As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his race in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by terminating Plaintiff's employment because of his race.

93.     As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

13

**THIRD CAUSE OF ACTION**
*Discrimination on the Basis of Sexual Orientation in Violation of Title VII*
*Against Defendants Amorepacific and Insperity*

94.　　Plaintiff repeats and realleges the allegations in paragraphs 1 through 93 inclusive as if fully set forth herein.

95.　　As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his sexual orientation in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by terminating Plaintiff's employment because of his sexual orientation.

96.　　As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

**FOURTH CAUSE OF ACTION**
*Retaliation in Violation of Title VII*
*Against Defendants Amorepacific and Insperity*

97.　　Plaintiff repeats and realleges the allegations in paragraphs 1 through 96 inclusive as if fully set forth herein.

98.　　As a result of the aforesaid acts, Defendants Amorepacific and Insperity retaliated against Plaintiff for opposing discrimination in the workplace in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, by terminating Plaintiff's employment in retaliation for his protected activity.

99.　　As a result of Defendants Amorepacific and Insperity's retaliatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

**FIFTH CAUSE OF ACTION**
*Discrimination on the Basis of National Origin in Violation of the NYSHRL*
*Against Defendants Amorepacific and Insperity*

100.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 99 inclusive as if fully set forth herein.

101.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his national origin in violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296(1)(a), 296-d, by terminating Plaintiff's employment because of his national origin.

102.    As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

**SIXTH CAUSE OF ACTION**
*Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of*
*National Origin in Violation of the NYSHRL Against Defendants Kim and Shim*

103.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 102 inclusive as if fully set forth herein.

104.    As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York State Human Rights Law, N.Y. Exec. L. §§ 296(1)(a), 296-d, in violation of the New York State Human Rights Law, N.Y. Exec. L. § 296(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on his national origin.

105.    As a result of Defendant Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment

opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## SEVENTH CAUSE OF ACTION
### *Discrimination on the Basis of Race in Violation of the NYSHRL Against Defendants Amorepacific and Insperity*

106.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 105 inclusive as if fully set forth herein.

107.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his race in violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296(1)(a), 296-d, by terminating Plaintiff's employment because of his race.

108.    As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## EIGHTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of Race in Violation of the NYSHRL Against Defendants Kim and Shim*

109.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 108 inclusive as if fully set forth herein.

110.    As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York State Human Rights Law, N.Y. Exec. L. §§ 296(1)(a), 296-d, in violation of the New York State Human Rights Law, N.Y. Exec. L. § 296(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on his race.

111.    As a result of Defendant Kim and Shim's unlawful acts, Plaintiff suffered

damage, including, without limitation, deprivation of income and benefits, loss of employment

opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of

enjoyment of life, and damage to reputation and career.

## NINTH CAUSE OF ACTION
### *Discrimination on the Basis of Sexual Orientation in Violation of the NYSHRL Against Defendants Amorepacific and Insperity*

112.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 111

inclusive as if fully set forth herein.

113.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity

discriminated against Plaintiff on account of his sexual orientation in violation of the New York

State Human Rights Law, N.Y. Exec. L. §§ 296(1)(a), 296-d, by terminating Plaintiff's

employment because of his sexual orientation.

114.    As a result of Defendants Amorepacific and Insperity's discriminatory and

adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and

benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental

anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## TENTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of Sexual Orientation in Violation of the NYSHRL Against Defendants Kim and Shim*

115.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 114

inclusive as if fully set forth herein.

116.    As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited,

compelled, and/or coerced acts forbidden under the New York State Human Rights Law, N.Y.

Exec. L. §§ 296(1)(a), 296-d, in violation of the New York State Human Rights Law, N.Y. Exec.

L. § 296(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on his sexual orientation.

117.    As a result of Defendant Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## ELEVENTH CAUSE OF ACTION
### *Retaliation in Violation of the NYSHRL*
### *Against Defendants Amorepacific and Insperity*

118.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 117 inclusive as if fully set forth herein.

119.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity retaliated against Plaintiff for opposing discrimination in the workplace in violation of the New York State Human Rights Law, N.Y. Exec. L. §§ 296(7), 296-d, by terminating Plaintiff's employment in retaliation for his protected activity.

120.    As a result of Defendants Amorepacific and Insperity's retaliatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## TWELFTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Retaliation*
### *in Violation of the NYSHRL Against Defendants Kim and Shim*

121.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 120 inclusive as if fully set forth herein.

122.    As a result of the aforesaid acts, Defendants Kim and Shin aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York State Human Rights Law, N.Y. Exec. L. §§ 296(7), 296-d, in violation of the New York State Human Rights Law, N.Y. Exec. L. § 296(6).  Specifically, Defendants Kim and Shin aided, abetted, incited, compelled, and/or coerced retaliation against Plaintiff in retaliation for his protected activity.

123.    As a result of Defendants Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## THIRTEENTH CAUSE OF ACTION
### *Discrimination on the Basis of National Origin in Violation of the NYCHRL*
### *Against Defendants Amorepacific and Insperity*

124.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 123 inclusive as if fully set forth herein.

125.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his national origin in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), by terminating Plaintiff's employment because of his national origin.

126.    As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## FOURTEENTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of National Origin in Violation of the NYCHRL Against Defendants Kim and Shim*

127.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 126 inclusive as if fully set forth herein.

128.   As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on his national origin.

129.   As a result of Defendants Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## FIFTEENTH CAUSE OF ACTION
### *Discrimination on the Basis of Race in Violation of the NYCHRL Against Defendants Amorepacific and Insperity*

130.   Plaintiff repeats and realleges the allegations in paragraphs 1 through 129 inclusive as if fully set forth herein.

131.   As a result of the aforesaid acts, Defendants Amorepacific and Insperity discriminated against Plaintiff on account of his race in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), by terminating Plaintiff's employment because of his race.

132.   As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and

benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental

anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## SIXTEENTH CAUSE OF ACTION
### *Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of Race in Violation of the NYCHRL Against Defendants Kim and Shim*

133.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 132

inclusive as if fully set forth herein.

134.     As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited,

compelled, and/or coerced acts forbidden under the New York City Human Rights Law, N.Y.C.

Admin. Code § 8-107(6).  Specifically, Defendants Kim and Shim aided, abetted, incited,

compelled, and/or coerced discrimination against Plaintiff based on his race.

135.     As a result of Defendants Kim and Shim's unlawful acts, Plaintiff suffered

damage, including, without limitation, deprivation of income and benefits, loss of employment

opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of

enjoyment of life, and damage to reputation and career.

## SEVENTEENTH CAUSE OF ACTION
### *Discrimination on the Basis of Sexual Orientation in Violation of the NYCHRL Against Defendants Amorepacific and Insperity*

136.     Plaintiff repeats and realleges the allegations in paragraphs 1 through 135

inclusive as if fully set forth herein.

137.     As a result of the aforesaid acts, Defendants Amorepacific and Insperity

discriminated against Plaintiff on account of his sexual orientation in violation of the New York

City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a), by terminating Plaintiff's

employment because of his sexual orientation.

138.    As a result of Defendants Amorepacific and Insperity's discriminatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## EIGHTEENTH CAUSE OF ACTION
### Aiding, Abetting, Inciting, Compelling and Coercing Discrimination on the Basis of Sexual Orientation in Violation of the NYCHRL Against Defendants Kim and Shim

139.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 138 inclusive as if fully set forth herein.

140.    As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced discrimination against Plaintiff based on his sexual orientation.

141.    As a result of Defendants Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

## NINETEENTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### Against Defendants Amorepacific and Insperity

142.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 141 inclusive as if fully set forth herein.

143.    As a result of the aforesaid acts, Defendants Amorepacific and Insperity retaliated against Plaintiff for opposing discrimination in the workplace in violation of the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-107(7), by terminating Plaintiff's employment in retaliation for his protected activity.

144.    As a result of Defendants Amorepacific and Insperity' retaliatory and adverse acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

### TWENTIETH CAUSE OF ACTION
*Aiding, Abetting, Inciting, Compelling and Coercing Retaliation*
*in Violation of the NYCHRL Against Defendants Kim and Shim*

145.    Plaintiff repeats and realleges the allegations in paragraphs 1 through 144 inclusive as if fully set forth herein.

146.    As a result of the aforesaid acts, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced acts forbidden under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(6).  Specifically, Defendants Kim and Shim aided, abetted, incited, compelled, and/or coerced retaliation against Plaintiff in retaliation for his protected activity.

147.    As a result of Defendants Kim and Shim's unlawful acts, Plaintiff suffered damage, including, without limitation, deprivation of income and benefits, loss of employment opportunities, emotional pain, suffering, inconvenience, mental anguish, humiliation, loss of enjoyment of life, and damage to reputation and career.

### JURY DEMAND

148.    Plaintiffs hereby demands trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that the Court grant judgment for Plaintiff and that it order and award Plaintiff the following relief against Defendants:

(1)   A declaratory judgment that the acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*;

(2)   Reinstatement to the highest position to which Plaintiff was and would be entitled and/or front pay;

(3)   Compensatory damages in the form of:

   a.   back pay with interest based on Plaintiff's appropriate compensation had he not been wrongfully terminated;

   b.   reimbursement for social security, experience, training opportunities, and other benefits, in an amount to be proved at trial; and

   c.   damages for emotional pain and suffering, inconvenience, mental anguish, humiliation, and loss of reputation in an amount to be proved at trial, but believed to exceed $500,000;

(4)   Punitive damages in an amount not less than $5,000,000;

(5)   Statutory attorneys' fees, costs and disbursements;

(6)   Interest; and

(7)   Such additional relief as the Court deems just and proper.

Dated: June 4, 2021
      New York, New York

 

BANTLE & LEVY LLP

*Lee F. Bantle*
_____
Lee F. Bantle
H. David Krauss
99 Park Avenue, Suite 1510
New York, NY 10016
(212) 228-9666
*Attorneys for Plaintiff Paul Connors*